## Kaufmann v. Kaufmann, Appellant.

*Divorce—Adultery — Costs — Order of respondent to pay — Expenses of detectives to obtain evidence.*

Costs incurred by a wife, in procuring evidence of the adultery of her husband, prior to bringing a suit for divorce a mensa et thoro, are not costs or expenses of the suit, in any proper sense of the term, and their payment should not be imposed as such upon the respondent.

There is no statutory authority in Pennsylvania for the payment by the husband of the wife's costs and expenses, pending proceedings for divorce, but the courts under their equitable powers early adopted the practice of ordering such payment, where the wife had no separate estate sufficient for the purpose, in order that she might not be denied justice, and for this reason, after answer she may in general have her costs taxed. The court, having jurisdiction of the suits between the husband and wife, is from time to time to make the proper allowance according to the circumstances. But the charges of detectives employed before suit to procure evidence against the respondent cannot be included in such allowance.

Argued April 26, 1921. Appeal, No. 60, April T., 1921, by defendant, from judgment of C. P. Allegheny County, April T., 1920, No. 1750, ordering payment of detectives' fees, as costs, in the case of Selma J. Kaufmann v. Nathan Kaufmann. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

604 KAUFMANN *v.* KAUFMANN, Appellant.

Petition for alimony, counsel fees and detectives' fees.

The facts are stated in the opinion of the Superior Court.

The court having granted a divorce a mensa et thoro, in addition, made the following order from which the respondent appealed.

"This case came on to be heard upon petition for alimony, counsel fees and expenses arising out of the above entitled case.

"After a careful consideration of the testimony, we are of the opinion that the amount set forth for detective services is highly excessive. The court in some instances has approved vast sums for such services but, that has been in cases where it was rendered obligatory by virtue of the development of the case at the time of the trial and not before, as in this case. The sum of $4,000 is hereby approved for detective services.

"As to counsel fees, the services rendered by counsel were mostly interviews as to the progress of the case and practically no legal work was done until the libel was filed. The sum of $1,000 to Thomas M. Marshall, Jr., Esq., and the sum of $500 to J. B. Brown, Esq., is hereby approved."

*Error assigned* was the order of the court.

*James R. Miller,* of *Patterson, Crawford, Miller* and *Arensberg,* and with him *Louis Caplan,* of *Sachs & Caplan,* for appellant.

*Thomas M. Marshall,* and with him *Thomas M. Marshall, Jr.,* for appellee.

OPINION BY KELLER, J., July 14, 1921:

This appeal raises the question whether the court of common pleas has authority to order a respondent, against whom a decree in divorce a mensa et thoro has been entered on the ground of adultery, to pay the libel-

lant for detective services paid or incurred by her before bringing her action in divorce.

There is no statutory authority in this State for the payment by the husband of a wife's costs and expenses pending proceedings for divorce, but the courts under their equitable powers early adopted the practice of ordering such payment where the wife had no separate estate sufficient for the purpose, in order that she might not in effect be denied justice.

In Graves v. Cole, 19 Pa. 171, the court said: "When the wife has no separate support, she must be subsisted, and her necessary costs paid pending proceedings for divorce. This rule is necessary; otherwise she might be denied justice for want of the funds required for the vindication of her rights; and for this reason, after answer, she may, in general, have her costs taxed de die in diem. She is not obliged to await the result of the suit......The court having jurisdiction of the suits between the husband and wife, is, from time to time, to make the proper allowance, according to the circumstances." And in Breinig v. Breinig, 26 Pa. 161, it was said: "It has been the uniform practice to allow a wife destitute of a separate estate, who is either suing or defending a case of divorce, such reasonable sum as will enable her to carry it on. She cannot sue in forma pauperis, for she is not a pauper if she is the wife of a man who has property. To deny her the means of paying for process and professional aid is to deny her justice." In Waldron v. Waldron, 55 Pa. 231, the court said: "It is undoubtedly the duty of the court to make a proper allowance to the wife, if she be not herself of sufficient ability, to enable her to maintain or defend her suit, having regard to the ability of her husband; and it never fails to do so." The costs and expenses which the court may order a husband to pay his wife may include charges for detectives employed by her to vindicate her rights, to defend her honor and maintain her good name: Hartje v. Hartje, 39 Pa. Superior Ct.

490. All the cases, however, in which such an order has been made had reference to the necessary costs and expenses to enable a wife to prosecute or defend a pending action in divorce. None of them went so far as to order the husband to pay for expenses incurred by her in watching him in order to procure evidence on which she might at some future date institute an action in divorce.

The appellee, in this case, asked the court to allow her the sum of $11,629, incurred or expended by her for detectives during a period of two and a quarter years, and none of which was incurred or expended after the filing of the libel in divorce. During that period she employed four different detective agencies, one of which had twenty-three operatives, (some of whom were women), working on the case, and as many as ten employed at one time.

We have carefully examined all the cases in this State relied upon as justifying the order in this case and find that in every instance the costs or expenses which the court ordered the husband to pay were in connection with the prosecution or defense of an action in divorce pending at the time they were incurred. In Powers' App., 120 Pa. 320, the expenses allowed grew out of the divorce action, such as the printing of the paper-book in the Supreme Court; in Fernald v. Fernald, 5 Pa. Superior Ct. 629, they covered the wife's traveling expenses in coming from her home in Florida to be present at the trial, and as stated by the court "were necessarily incurred in defending the suit"; in Biddle v. Biddle, 50 Pa. Superior Ct. 42, they were for the services and expenses of counsel. In Lynn v. Lynn, 68 Pa. Superior Ct. 324, and Lynn v. Lynn, 76 Pa. Superior Ct. 428, where the wife was the libellant, the allowance for expenses covered only those incurred or to be incurred in the prosecution of the suit.

Nor have we found a different rule in other jurisdictions. In very many states the allowance is specifically made to the wife under the term "suit money" to enable

her to prosecute or defend the divorce action. In others it is called "costs of suit": Towson v. Towson, 258 Fed. 517; "costs of proceedings": Chappell v. Chappell, 86 Md. 532, 39 Atl. 984; "a sum for carrying on the suit": Mix v. Mix, 1 Johns. Ch. 108 (N. Y.); "the means of prosecuting or defending a suit for divorce": Coles v. Coles, 2 Md. Ch. 341; "expense money in defending [or prosecuting] in good faith an action in divorce": Medlin v. Medlin, 175 N. C. 529, 95 S. E. 857; "expenses of litigating a divorce action": Rumping v. Rumping, 41 Mont. 33, 108 Pac. 10; "expenses during suit": Shearer v. Shearer, 189 S. W. 592 (Mo.); "necessary costs and expenses in prosecution of cause": Robbins v. Robbins, 138 Mo. App. 211, 119 S. W. 1075; "such expenses of suit as will insure the wife an efficient preparation of her case and a fair trial thereof": Snider v. Snider, 179 Ind. 583, 102 N. E. 32; Davis v. Davis, 141 Ind. 367, 40 N. E. 803; "money necessary to enable the wife to prosecute or defend the action": Day v. Day, 15 Idaho 107, 96 Pac. 431.

The allowance is ordinarily prospective, only covering sums to be expended in the future: Tranter v. Tranter, 178 N. Y. Supp. 521; 19 C. J. 229, 233; but in some jurisdictions it may include reimbursement of moneys theretofore paid by the wife to carry on the action: Szymanski v. Szymanski, 151 Wis. 145, 138 N. W. 53; Davis v. Davis, 141 Ind. 367, 40 N. E. 803; but in none of them have we found an order directing the husband to pay for moneys expended or bills incurred by the wife before the institution of a divorce action in order to procure evidence against him on which to found such action. No statute authorizes their payment; they are not comprised among the expenses recognized by the decisions of our courts as just and necessary to the wife, in order to permit her to maintain or defend her action; nor is there any public policy requiring their payment. On the contrary, in our opinion, it would be against public policy to make a precedent ordering such payment.

If the appellee at the end of several years' watching had been unable to detect her husband in any marital unfaithfulness, she would have had to pay for these detectives out of her own private estate; that it finally resulted in furnishing evidence upon which she secured the divorce does not shift the obligation. They are not costs or expenses of suit, or "suit money" in any proper sense of the term, and their payment should not have been imposed as such by the court upon the husband.

The second assignment of error is sustained and the order of the court below in so far as it requires the appellant to pay to the appellee the sum of $4,000 for detectives' services incurred before the institution of the suit in divorce is reversed. Costs on this appeal to be paid by the appellee.